# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

---

FEDERAL TRADE COMMISSION,

                Plaintiff,

                              Civil No.

v.

                              COMPLAINT FOR INJUNCTION

ODYSSEUS MARKETING, INC.,         AND OTHER EQUITABLE RELIEF

and WALTER RINES,

                Defendants.

---

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges as follows:

1.      The Commission brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain preliminary and permanent injunctive relief, restitution, disgorgement and other equitable relief against the Defendants for their deceptive and unfair acts or practices in connection with their advertising and distribution of software programs to consumers in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§ 45(a), 52, and 53(b); and 28 U.S.C. §§ 1331, 1337(a) and 1345.

3.      Venue in the United States District Court for the District of New Hampshire is proper under 15 U.S.C. § 53(b), as amended by the FTC Act Amendments of 1994, Pub. L. No. 103-312, 108 Stat. 1691, and 28 U.S.C. §§ 1391(b) and (c).

**PLAINTIFF**

4.      Plaintiff, the Federal Trade Commission, is an independent agency of the United

States government created by statute.  15 U.S.C. §§ 41 *et seq*.  The Commission enforces Section

5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or

affecting commerce.  The Commission is authorized to initiate federal district court proceedings

by its own attorneys to enjoin violations of the FTC Act and to secure such equitable relief as

may be appropriate in each case, including restitution for injured consumers, consumer redress,

and disgorgement.  15 U.S.C. § 53(b).

**DEFENDANTS**

5.      Defendant Odysseus Marketing, Inc. ("OMI"), is a New Hampshire corporation

with its principal office or place of business at 6 Laurel Lane, Stratham, New Hampshire 03885.

Since at least September 2003, and continuing thereafter, OMI has developed, advertised,

promoted, and distributed to the public various software products, including a purported

"computer file-sharing anonymizer" called Kazanon and other products that purportedly increase

the speed of a computer in downloading information from the Internet and in browsing the

Internet.  OMI controls several web sites and Internet servers, including

www.odysseusmarketing.com, www.kazanon.com, www.downloads-for-free.com, www.omi-

update.net, www.essential-free-downloads.com, www.searchassistant.net, and

www.datastorm.biz.  OMI uses these web sites to distribute software products, collect

information from computers, and send pop-up and other Internet advertisements.  OMI transacts

or has transacted business in the District of New Hampshire.

6.      Defendant Walter Rines ("Rines") is an officer of OMI.  Acting individually or in

concert with others, Rines has formulated, directed, controlled, or participated in the acts and

practices of OMI, including the acts and practices complained of below.  Rines resides and

transacts or has transacted business in the District of New Hampshire.

## COMMERCE

7.      The acts and practices of OMI and Rines (collectively, "Defendants") alleged in

this Complaint are or have been in or affecting commerce, as "commerce" is defined in Section 4

of the FTC Act, 15 U.S.C. §§ 44.

## DEFENDANTS' BUSINESS PRACTICES

### Introduction

8.      Since at least September 2003, through a variety of means, Defendants distribute

to consumers' computers a software program, known as "Clientman," that disseminates pop-up

and other Internet advertisements and installs a number of third-party advertising and other

programs without notice to consumers.  Clientman and the additional programs that it installs

interfere with consumers' normal use of the Internet and degrade their computers' performance.

In some cases, Defendants induce consumers to download Clientman by including it with

software products for which Defendants make false performance, efficacy, and benefits claims.

Defendants fail to disclose the consequences of downloading these various software products and

their included software, Clientman.  After Clientman has been installed to computers, it cannot

be uninstalled through reasonable means.

### Advertisements for Kazanon

9.      Among the means that Defendants use to install Clientman to consumers'

computers is including it with downloads of various software products that they advertise and

distribute to the public at no charge through the Internet.  Since at least September 2003,

Defendants have included Clientman with downloads of the software program Kazanon, which

3

Defendants advertise as a means for users to anonymously share computer files, including music,

video, photograph, and software files, through the Internet.

10.    To induce consumers to download Kazanon, Defendants disseminate and cause to

be disseminated advertisements for the software, including the web site www.kazanon.com (the

"Kazanon web site"), which is attached as Exhibit A.  The Kazanon web site contains the

following statements and depictions:

**KAZANON**                                    [*Depiction of news article*
                                               *with headline*
**DOWNLOAD MUSIC WITHOUT FEAR**                    *"Record companies plan*
                                               *legal action!*]

**Introducing KAZANON V1.0 - the FIRST AND ONLY FREE FILE-
SHARING ANONYMIZER**

**WHAT IS KAZANON?**

You can FINALLY - ANONYMOUSLY - safely and securely download and,
swap, and trade music, movies, software, everything - with your FAVORITE
program (Kazaa, Morpheus, Grokster, WinMX, or any of the P2P programs!)

KAZANON makes you TOTALLY ANONYMOUS and INVISIBLE - NO ONE
WILL EVER KNOW YOUR REAL IDENTITY, LOCATION, or IP ADDRESS.

Kazanon silently modifies your PC's Internet settings to make you invisible,
untracable, and totally anonymous.  NO MORE FEAR of a lawsuit or prosecution
just for downloading your favorite music!

**HOW MUCH DOES IT COST?**

**NOTHING!!!**

Kazanon is 100% FREE, but we cannot promise it will always be available - WE
will probably be sued for making it available!

That's why we want to get it out to everyone right away, and keep the file-sharing
revolution alive!  Kazanon runs on Windows 98/ME/2k/XP only.  Make sure and
hit CLTR+D RIGHT NOW to bookmark this page!

**WE WILL NOT BE INTIMIDATED!**

4

**WE WILL NOT BE BULLIED INTO SUBMISSION!**

Did you know?  Kazanon works with all P2P file sharing programs!

**GIMME MY FREE KAZANON !!!**
To download, just click on the Kazanon 1.0 Download link below and run or open the KAZANON10.exe file when prompted.  The application will thereafter silently keep running at all times and keep you safe.

Kazanon is FREE, all we ask is that you optionally Tell-A-Friend about us and send this page to your friends and family so they can trade music without fear as well!  Link to this page if you can!  Don't let the record companies win!

**DON'T LET THE RECORD COMPANIES WIN!  DOWNLOAD NOW!!!**

By checking this box I hereby certify that I have read and agreed with all of the Terms and Conditions

[Exhibit A, www.kazanon.com web page, as of July 11, 2005]

**Effects on Computers That Have Kazanon Installed**

11.    After Kazanon is installed to the computer, it automatically downloads Clientman. Clientman in turn downloads a number of advertising software programs ("adware") and other software programs, including, but not limited to, VX2, Blazefind, Ncase, DealHelper, Surfsidekick, InternetOptimizer, BargainBuddy, WebRebates, Avenue A, and eZula.  Several of these programs are downloaded from the Internet servers abetterinternet.com, speedera.net, skoobidoo.com, and flingstone.com, which are respectively controlled by the companies Direct Revenue, Inc., Speedera, Inc., and CDT, Inc.

12.    Clientman and these additional software programs, among other things, intercept search results that are provided to users who query popular Internet search engines, including the Google and Yahoo web sites, and replace them with results that differ in content.  *See, e.g.*, Exhibits B(1) and B(2) and C(1) and C(2).  Defendants insert these "fake" search results, including hyperlinks and banner ads, in web pages that have the "look and feel" of the search

5

engines' web pages.  Defendants distribute these hyperlinks and banner ads on behalf of third

parties.  There is no notice to users that their search results are being manipulated at the time

they query these search engine web sites.

13.     Clientman and these additional software programs also collect and use

information from the computers on which they are downloaded to send targeted advertisements

back to the computers.  In many cases, Clientman captures and transmits information from these

computers to, among others, the Internet servers datastorm.biz and omi-update.net, which

Defendants control.  Based on the information that Clientman collects, Defendants send

computer users a number of pop-up and other advertisements on behalf of third parties.

**The Kazanon End User License Agreement**

14.     The consequences of downloading Kazanon are disclosed only in the End User

License Agreement ("EULA"), in the middle of the two-page document.  The home page of the

Kazanon web site contains no information about the consequences of downloading Kazanon

other than a hyperlink that is labeled "Terms and Conditions," which links to the Kazanon

EULA.  The hyperlink is not labeled to convey the nature, relevance, or significance of the

EULA.

15.     To download Kazanon, a consumer is required to check a small box to "certify

that [he or she] has read and agrees with all the Terms and Conditions."  *See* Exhibit A.

However, the consumer does not have to click on the "Terms and Conditions" hyperlink or view

the Kazanon EULA to download Kazanon.  In cases where a consumer opts to click on the

"Terms and Conditions" hyperlink, the two-page EULA is displayed on their computer screen.

*See* Exhibit D.

16.     Part III of the Kazanon EULA states that the "user understands and agrees that the

application may or may not render them anonymous, untraceable, or invisible at any given time. . . ." *See* Exhibit D.

17.     Parts V and VI also state that Kazanon and "associated components" may: (1) "communicate from time to time with Odysseus Marketing, Inc. server systems and/or that of its partners" and engage in "communications and data transmissions of any and all types;" and (2) "alter Internet browsing and/or computer user experiences in a manner acceptable to [OMI], in its sole discretion, including but not limited to, search engine query results, display of pop-up window messages, highlighting and hyperlinking words on web pages, redirection of error message pages, changing user home page, addition of bookmarks to user's browser, and/or other alterations/modifications." *See* Exhibit D.

18.     Parts VII through XII also state that the user provides Defendants with "express permission" to: (1) collect "personal information including, but not limited to, name, demographic data, interests, profession, education, marital status, age, income, and any other information [OMI] decides to collect" and "information and data regarding Internet activity, including web sites visited, search queries conducted, applications installed and used, files present on the users hard drive or system, transactions conducted, and any other behavioral data deemed necessary by [OMI]"; (2) use such information and data "as [OMI] sees fit, including the sharing, rental, or sale of any of said data or any portion thereof to any entity at the sole discretion of [OMI] and that the "permission granted for collection and use of data is irrevocable and survives any removal of [Kazanon] and associated components;" (3) "alter applications, files, and/or data . . . ., including but not limited to file sharing applications, media viewers, and/or player applications;" (4) "disable or delete applications and/or files deemed unfriendly or harmful to [OMI] or any of its partners in OMI's sole discretion without notice to the user, and

may auto-reinstall application and/or any associated components, unless approved auto-uninstall application is used."  *See* Exhibit D.

19.     Parts XV and XVI state that in accepting Kazanon's terms and conditions, the user also agrees to accept the terms and conditions of 180search Assistant and DealHelper, two other applications that may be installed in conjunction with Kazanon.  *See* Exhibit D.

20.     Since at least November 2004, the final paragraph of the Kazanon EULA has instructed consumers to visit the web page www.oddysseusmarketing.com/uninstall to uninstall Kazanon.  *See* Exhibit D.

**Installation of Clientman to Consumers' Computers**

21.     Clientman, which is distributed through Kazanon and other means, is installed to computers in a manner that prevents consumers from detecting it.  At the time Clientman begins to install itself, consumers do not receive a notice.  Also, Clientman does not notify consumers when its installation is complete.  Further, in cases where Clientman is installed on a computer that uses the Windows Operating System ("Windows OS"), it does not appear as an icon on the desktop or in the OS's Start Menu.

22.     During installation, Clientman loads numerous files to the computer, including, but not limited to, the file msmc.exe.  As part of its installation, however, Clientman fails to create a folder in the Windows OS to store its files.  Instead, Clientman stores its files in multiple places on the Windows OS.  In many cases, Clientman's files contain a date stamp that substantially precedes the date on which the files are actually installed.  Further, Clientman's files are not named to convey their association with Clientman, Defendants, Kazanon, or any other program with which it is included.  Thus, unless consumers know the specific names and locations of the files that comprise Clientman, consumers cannot find the program on their

8

computers.

23.     In addition to loading new files, in some cases, Clientman modifies existing Windows OS files on the computer, including, but not limited to, the critical OS files mycomput.dll, shell32.dll, kernel32.dll, and win32k.sys.  Modifying these files permanently affects a computer's functionality.  Defendants do not specify to consumers the files that Clientman modifies.

**Inability to Uninstall Clientman**

24.     To stop the effects on computers of downloading Clientman, consumers must remove it.  During installation, however, Clientman is not detected by the Windows OS and does not appear in the default "Add/Remove" utility that is located in the control panel of the Windows OS.  Thus, consumers cannot remove Clientman using this standard Add/Remove utility.  In addition, Clientman does not include its own uninstall tool enabling consumers to remove it.

25.     Since at least November 2004, Defendants have located a purported uninstall tool for Clientman on the web page at www.oddysseusmarketing.com/uninstall.  This web page states "Welcome to the uninstall page for clientman.  Instructions are as follows."  *See* Exhibit E. Following these uninstall instructions, however, does not fully remove Clientman, and does not remove any of the additional software programs that Clientman installs.  In addition, no files that Clientman has modified are restored to their original function.  After the user completes this purported removal process, the activities described in Paragraphs 11 through 13 continue to occur._____

**Defendants Ill-Gotten Revenues**

26.     Defendants generate or have generated substantial revenues through their

deceptive and unfair practices in disseminating Internet advertisements to consumers and

downloading and installing advertising and other software programs on behalf of others.

Defendants receive or have received fees from advertisers to disseminate their Internet ads and

from software vendors based on the number of software downloads and installs that they have

caused.

## COUNT ONE

### False Representation About File Sharing Anonymity

27.     Through the means described in Paragraph 10, Defendants have represented,

expressly or by implication, that Kazanon makes users of P2P file-sharing programs anonymous,

and that therefore no one will discover their identity, or their computers' IP address or location,

when they download or trade music, movies, software, or any other data, sound, or video file

through the Internet.

28.     The representation set forth in Paragraph 27 is false and/or was not substantiated

at the time the representation was made.

29.     Therefore, the making of the representation set forth in Paragraph 27 above

constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO

### Failure to Adequately Disclose the
### Presence and Nature of Bundled Software

30.     Through the means described in Paragraph 10, Defendants have represented,

expressly or by implication, that consumers who download Kazanon will receive a file-sharing

anonymizer.  However, as described in Paragraphs 11 through 13, installing Kazanon also causes

the installation of additional software programs, some of which replace search results provided

by search engine web sites, collect and transmit information from computers to third parties, send

pop-up advertisements and other Internet ads, and download more software programs. These

facts would be material to consumers in their decision to install or use Kazanon, but Defendants

failed to adequately disclose these facts to consumers. Therefore, the failure to disclose these

facts, in light of the representation made, constitutes a deceptive act or practice, in or affecting

commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

### Unfairly Disseminating Software That Consumers
### Cannot Remove from Their Computers

31.     Through its distribution of Kazanon and other means, Defendants install the

Clientman software, as described in Paragraphs 11 through 13 and 21 through 25, which

downloads additional software programs, replaces search results provided by search engine web

sites, collects and transmits information from computers to third parties, and sends pop-up

advertisements and other Internet ads. Through the means described in Paragraphs 21 through

25, consumers cannot locate this software on their computers and remove it through the use of

reasonable efforts.

32.     Defendants' course of conduct in disseminating software that is described in

Paragraphs 11 through 13 and 21 through 25, causes substantial consumer injury by requiring

consumers to spend substantial time or money to remove this software from their computers and

to stop its effects on them. Consumers cannot reasonably avoid this injury because Defendants

do not provide an effective means for them to locate the software and remove it from their

computers. Thus, Defendants' practices cause or are likely to cause substantial injury that

11

consumers cannot reasonably avoid, and this injury is not outweighed by countervailing benefits to consumers or competition.

33.     Therefore, Defendants' practices, as described in Paragraphs 31 and 32 above, constitute an unfair practice in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

34.     Defendants' violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a), as set forth above, have caused and continue to cause substantial injury to consumers.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

35.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief, including consumer redress, disgorgement and restitution, to prevent and remedy any violations of any provision of law enforced by the Federal Trade Commission.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, the Federal Trade Commission, requests that this Court, as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

1.     Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief.

2.     Permanently enjoin the Defendants from violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged in this Complaint.

3.     Award such equitable relief as the Court finds necessary to redress injury to

consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains;

    4.    Award Plaintiff the costs of bringing this action as well as such additional equitable relief as the Court may determine to be just and proper.

Dated September 21, 2005

                    Respectfully submitted:

                    FOR THE FEDERAL TRADE COMMISSION:

                    WILLIAM BLUMENTHAL
                    General Counsel

                    /s/ Laura Sullivan
                    Laura M. Sullivan (New York Bar No. 2919660)
                    Tracy R. Shapiro (California Bar No. 220811)
                    Federal Trade Commission
                    601 New Jersey Avenue, N.W.
                    Washington, D.C. 20001
                    (202) 326-3327/2343 (Offices)
                    (202) 326-3259 (Fax)

                    Attorneys for Plaintiff