# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

FEDERAL TRADE COMMISSION,

                Plaintiff,

v.

ODYSSEUS MARKETING, INC.,
and WALTER RINES.

                Defendants.

Civil No. 05-CV-330-SM

FIRST AMENDED COMPLAINT
FOR INJUNCTION AND OTHER
EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges as follows:

1.    The Commission brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain preliminary and permanent injunctive relief, restitution, disgorgement and other equitable relief against the Defendants for their deceptive and unfair acts or practices in connection with their advertising and distribution of software programs to consumers in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §§ 45(a), 52, and 53(b); and 28 U.S.C. §§ 1331, 1337(a) and 1345.

3.    Venue in the United States District Court for the District of New Hampshire is proper under 15 U.S.C. § 53(b), as amended by the FTC Act Amendments of 1994, Pub. L. No. 103-312, 108 Stat. 1691, and 28 U.S.C. §§ 1391(b) and (c).

**PLAINTIFF**

4.      Plaintiff, the Federal Trade Commission, is an independent agency of the United States government created by statute. 15 U.S.C. §§ 41 *et seq*. The Commission enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission is authorized to initiate federal district court proceedings by its own attorneys to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including restitution for injured consumers, consumer redress, and disgorgement. 15 U.S.C. § 53(b).

**DEFENDANTS**

5.      Defendant Odysseus Marketing, Inc. ("OMI"), is a New Hampshire corporation with its principal office or place of business at 6 Laurel Lane, Stratham, New Hampshire 03885. Since at least September 2003, and continuing thereafter, OMI has developed, advertised, promoted, and distributed to the public various software products, including a purported "computer file-sharing anonymizer" called Kazanon and other products that purportedly increase the speed of a computer in downloading information from the Internet and in browsing the Internet. OMI controls several web sites and Internet servers, including www.odysseusmarketing.com, www.kazanon.com, www.downloads-for-free.com, www.omi-update.net, www.essential-free-downloads.com, www.searchassistant.net, and www.datastorm.biz. OMI uses these web sites to distribute software products, collect personal information from computers, and send pop-up and other Internet advertisements. OMI transacts or has transacted business in the District of New Hampshire.

6.      Defendant Walter Rines ("Rines") is an officer of OMI. Acting individually or in

concert with others, Rines has formulated, directed, controlled, or participated in the acts and practices of OMI, including the acts and practices complained of below.  Rines resides and transacts or has transacted business in the District of New Hampshire.

## COMMERCE

7.      The acts and practices of OMI and Rines (collectively, "Defendants") alleged in this Complaint are or have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. §§ 44.

## DEFENDANTS' BUSINESS PRACTICES

### Introduction

8.      Since at least September 2003, through a variety of means, Defendants have distributed to consumers' computers a software program, known as "Clientman," that disseminates pop-up and other Internet advertisements, collects personal information, and installs a number of third-party advertising and other programs without notice to consumers. Clientman and the additional programs that it installs interfere with consumers' normal use of the Internet and degrade their computers' performance.  In some cases, Defendants distribute Clientman by exploiting computer security vulnerabilities to download the program to consumers' computers without authorization.  In other cases, Defendants induce consumers to download Clientman by including it with software products for which Defendants make false performance, efficacy, and benefits claims.  Defendants fail to disclose the consequences of downloading these various software products and their included software, Clientman.  After Clientman has been installed to computers, it cannot be uninstalled through reasonable means.

### Distribution of Clientman by Exploiting Computer Security Vulnerabilities

9.      Among the means that Defendants use to install Clientman to consumers'

computers is exploiting particular computer security vulnerabilities in the Microsoft Internet Explorer web browser ("IE web browser") and other applications in order to install Clientman and other software onto consumers' computers without their knowledge or authorization.

10. A web browser, which is used by a computer to locate and view Internet web pages, serves as a liaison between a computer and the information delivered to the computer through the Internet. Most web browsers, including the IE web browser, generate a notification message to the user whenever software code is being downloaded to the user's computer from the Internet. The notification message gives the user the option to authorize or not authorize the download. By exploiting certain vulnerabilities in the IE web browsers, however, Defendants have been able to download and install Clientman and other software without triggering the display of the IE web browser notification message. In the absence of such notification message, consumers neither knew of nor authorized the software downloads and installations. Defendants have distributed and caused to be distributed Clientman in this manner since at least September 2003.

**Distribution of Clientman With Kazanon**

11. Another means that Defendants use to install Clientman to consumers' computers is including it with downloads of various software products that they advertise and distribute to the public at no charge through the Internet. Since at least September 2003, Defendants have included Clientman with downloads of the software program Kazanon, which Defendants advertise as a means for users to anonymously share computer files, including music, video, photograph, and software files, through the Internet. After Kazanon is installed to the computer, it automatically downloads Clientman.

12. To induce consumers to download Kazanon, Defendants disseminate and cause to

be disseminated advertisements for the software, including the web site www.kazanon.com (the

"Kazanon web site"), which is attached as Exhibit A.  The Kazanon web site contains the

following statements and depictions:

| | |
|---|---|
| **KAZANON** | [*Depiction of news article with headline* |
| **DOWNLOAD MUSIC WITHOUT FEAR** | *"Record companies plan legal action!*] |

**Introducing KAZANON V1.0 - the FIRST AND ONLY FREE FILE-SHARING ANONYMIZER**

**WHAT IS KAZANON?**

You can FINALLY - ANONYMOUSLY - safely and securely download and, swap, and trade music, movies, software, everything - with your FAVORITE program (Kazaa, Morpheus, Grokster, WinMX, or any of the P2P programs!)

KAZANON makes you TOTALLY ANONYMOUS and INVISIBLE - NO ONE WILL EVER KNOW YOUR REAL IDENTITY, LOCATION, or IP ADDRESS.

Kazanon silently modifies your PC's Internet settings to make you invisible, untracable, and totally anonymous.  NO MORE FEAR of a lawsuit or prosecution just for downloading your favorite music!

**HOW MUCH DOES IT COST?**

**NOTHING!!!**

Kazanon is 100% FREE, but we cannot promise it will always be available - WE will probably be sued for making it available!

That's why we want to get it out to everyone right away, and keep the file-sharing revolution alive!  Kazanon runs on Windows 98/ME/2k/XP only.  Make sure and hit CLTR+D RIGHT NOW to bookmark this page!

**WE WILL NOT BE INTIMIDATED!**
**WE WILL NOT BE BULLIED INTO SUBMISSION!**

Did you know?  Kazanon works with all P2P file sharing programs!

**GIMME MY FREE KAZANON !!!**
To download, just click on the Kazanon 1.0 Download link below and run or open the KAZANON10.exe file when prompted.  The application will thereafter silently

> keep running at all times and keep you safe.
>
> Kazanon is FREE, all we ask is that you optionally Tell-A-Friend about us and send this page to your friends and family so they can trade music without fear as well!  Link to this page if you can!  Don't let the record companies win!
>
> **DON'T LET THE RECORD COMPANIES WIN!  DOWNLOAD NOW!!!**
>
> By checking this box I hereby certify that I have read and agreed with all of the <u>Terms and Conditions</u>
>
> [Exhibit A, <u>www.kazanon.com</u> web page, as of July 11, 2005]

**Effects on Computers That Have Clientman Installed**

13.     Once installed, Clientman disseminates advertisements, collects personal information, and downloads a number of advertising software programs ("adware") and other software programs, including, but not limited to, VX2, Blazefind, Ncase, DealHelper, Surfsidekick, InternetOptimizer, BargainBuddy, WebRebates, Avenue A, and eZula.  Several of these programs are downloaded from the Internet servers abetterinternet.com, speedera.net, skoobidoo.com, and flingstone.com, which are respectively controlled by the companies Direct Revenue, Inc., Speedera, Inc., and CDT, Inc.

14.     Clientman and these additional software programs, among other things, intercept search results that are provided to users who query popular Internet search engines, including the Google and Yahoo web sites, and replace them with results that differ in content.  *See, e.g.*, Exhibits B(1) and B(2) and C(1) and C(2).  Defendants insert these "fake" search results, including hyperlinks and banner ads, in web pages that have the "look and feel" of the search engines' web pages.  Defendants distribute these hyperlinks and banner ads on behalf of third parties.  There is no notice to users that their search results are being manipulated at the time they query these search engine web sites.

15.     Clientman and these additional software programs also collect and use information

from the computers on which they are downloaded to send targeted advertisements back to the computers.

16. In addition, Clientman is able to capture and transmit personal information such as consumers' first and last name, address, email, telephone number, and Internet browsing and purchases. Clientman captures personal information from sources such as registry application information stored in consumers' computers, search engine queries, text entered into online forms, and cookies stored in the computers' hard drives. Once captured, Clientman transmits the personal information to Defendants' Internet servers datastorm.biz and omi-update.net.

### Disclosures Regarding The Presence and Nature of Clientman

17. Defendants do not provide any disclosures regarding the installation of Clientman and other software when they distribute the program by exploiting vulnerabilities in the IE web browser. The installation occurs without consumers' knowledge or authorization.

18. Defendants only disclose that downloading Kazanon will cause the installation of Clientman and other software in the middle of a two-page End User License Agreement ("EULA"). The home page of the Kazanon web site contains no information about the consequences of downloading Kazanon other than a hyperlink that is labeled "Terms and Conditions," which links to the Kazanon EULA. The hyperlink is not labeled to convey the nature, relevance, or significance of the EULA.

19. To download Kazanon, a consumer is required to check a small box to "certify that [he or she] has read and agrees with all the Terms and Conditions." *See* Exhibit A. However, the consumer does not have to click on the "Terms and Conditions" hyperlink or view the Kazanon EULA to download Kazanon. In cases where a consumer opts to click on the "Terms and Conditions" hyperlink, the two-page EULA is displayed on their computer screen. *See* Exhibit D.

20. Part III of the Kazanon EULA states that the "user understands and agrees that the application may or may not render them anonymous, untraceable, or invisible at any given time. . . ." *See* Exhibit D.

21. Parts V and VI also state that Kazanon and "associated components" may: (1) "communicate from time to time with Odysseus Marketing, Inc. server systems and/or that of its partners" and engage in "communications and data transmissions of any and all types;" and (2) "alter Internet browsing and/or computer user experiences in a manner acceptable to [OMI], in its sole discretion, including but not limited to, search engine query results, display of pop-up window messages, highlighting and hyperlinking words on web pages, redirection of error message pages, changing user home page, addition of bookmarks to user's browser, and/or other alterations/modifications." *See* Exhibit D.

22. Parts VII through XII also state that the user provides Defendants with "express permission" to: (1) collect "personal information including, but not limited to, name, demographic data, interests, profession, education, marital status, age, income, and any other information [OMI] decides to collect" and "information and data regarding Internet activity, including web sites visited, search queries conducted, applications installed and used, files present on the users hard drive or system, transactions conducted, and any other behavioral data deemed necessary by [OMI]"; (2) use such information and data "as [OMI] sees fit, including the sharing, rental, or sale of any of said data or any portion thereof to any entity at the sole discretion of [OMI] and that the "permission granted for collection and use of data is irrevocable and survives any removal of [Kazanon] and associated components;" (3) "alter applications, files, and/or data . . . ., including but not limited to file sharing applications, media viewers, and/or player

applications;" (4) "disable or delete applications and/or files deemed unfriendly or harmful to [OMI] or any of its partners in OMI's sole discretion without notice to the user, and may auto-reinstall application and/or any associated components, unless approved auto-uninstall application is used."  *See* Exhibit D.

23.  Parts XV and XVI state that in accepting Kazanon's terms and conditions, the user also agrees to accept the terms and conditions of 180search Assistant and DealHelper, two other applications that may be installed in conjunction with Kazanon.  *See* Exhibit D.

24.  Since at least November 2004, the final paragraph of the Kazanon EULA has instructed consumers to visit the web page www.oddysseusmarketing.com/uninstall to uninstall Kazanon.  *See* Exhibit D.

### Installation of Clientman to Consumers' Computers

25.  Clientman is installed to computers in a manner that prevents consumers from detecting it.  At the time Clientman begins to install itself, consumers do not receive a notice.  Also, Clientman does not notify consumers when its installation is complete.  Further, in cases where Clientman is installed on a computer that uses the Windows Operating System ("Windows OS"), it does not appear as an icon on the desktop or in the OS's Start Menu.

26.  During installation, Clientman loads numerous files to the computer, including, but not limited to, the file msmc.exe.  As part of its installation, however, Clientman fails to create a folder in the Windows OS to store its files.  Instead, Clientman stores its files in multiple places on the Windows OS.  In many cases, Clientman's files contain a date stamp that substantially precedes the date on which the files are actually installed.  Further, Clientman's files are not named to convey their association with Clientman, Defendants, Kazanon, or any other program with which it is included.  Thus, unless consumers know the specific names and locations of the

files that comprise Clientman, consumers cannot find the program on their computers.

27. In addition to loading new files, in some cases, Clientman modifies existing Windows OS files on the computer, including, but not limited to, the critical OS files mycomput.dll, shell32.dll, kernel32.dll, and win32k.sys. Modifying these files permanently affects a computer's functionality. Defendants do not specify to consumers the files that Clientman modifies.

## Inability to Uninstall Clientman

28. To stop the effects on computers of downloading Clientman, consumers must remove it. During installation, however, Clientman is not detected by the Windows OS and does not appear in the default "Add/Remove" utility that is located in the control panel of the Windows OS. Thus, consumers cannot remove Clientman using this standard Add/Remove utility. In addition, Clientman does not include its own uninstall tool enabling consumers to remove it.

29. Since at least November 2004, Defendants have located a purported uninstall tool for Clientman on the web page at www.oddysseusmarketing.com/uninstall. This web page states "Welcome to the uninstall page for clientman. Instructions are as follows." *See* Exhibit E. Following these uninstall instructions, however, does not fully remove Clientman, and does not remove any of the additional software programs that Clientman installs. In addition, no files that Clientman has modified are restored to their original function. After the user completes this purported removal process, the activities described in Paragraphs 13 through 16 continue to occur.

## Defendants' Ill-Gotten Revenues

30. Defendants generate or have generated substantial revenues through their deceptive and unfair practices in disseminating Internet advertisements to consumers and

10

downloading and installing advertising and other software programs on behalf of others. Defendants receive or have received fees from advertisers to disseminate their Internet ads and from software vendors based on the number of software downloads and installs that they have caused.

## COUNT ONE

### Unfairly Installing Advertising, Data Collection and Other Software Programs

31.    In numerous instances, through the means described in Paragraphs 9 through 10, the Defendants download and install or have downloaded and installed Clientman onto consumers' computers without their knowledge or authorization by exploiting vulnerabilities in the IE web browser.

32.    Clientman downloads and installs advertising and other software programs. Clientman and these software programs replace search results provided by search engine web sites and send pop-up advertisements and other Internet ads.  In addition, Clientman collects and stores consumers' personal information without their knowledge and contrary to their expectations.

33.    Consumers are required to spend substantial time and money to resolve these problems with their computers and to prevent the future collection of personal information from their computers.  Further, consumers have no recourse to reclaim the personal information that Defendants have collected or to prevent Defendants' disclosure of that information.  Consumers cannot reasonably avoid this substantial injury because the Defendants have exploited vulnerabilities in their computers' IE web browsers to download and install without their knowledge or authorization the software program that leads to the injury.  The Defendants' practices do not benefit consumers or competition.  Thus, their practices cause or are likely to

cause substantial injury that cannot be reasonably avoided, and this injury is not outweighed by countervailing benefits to consumers or competition.

34.     Therefore, the Defendants' practices, as described in Paragraph 31 through 33 above, are unfair and violate Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## COUNT TWO

### False Representation About File Sharing Anonymity

35.     Through the means described in Paragraph 12, Defendants have represented, expressly or by implication, that Kazanon makes users of P2P file-sharing programs anonymous, and that therefore no one will discover their identity, or their computers' IP address or location, when they download or trade music, movies, software, or any other data, sound, or video file through the Internet.

36.     The representation set forth in Paragraph 35 is false and/or was not substantiated at the time the representation was made.

37.     Therefore, the making of the representation set forth in Paragraph 35 above constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

### Failure to Adequately Disclose the
### Presence and Nature of Bundled Software

38.     Through the means described in Paragraph 12, Defendants have represented, expressly or by implication, that consumers who download Kazanon will receive a file-sharing anonymizer.  However, as described in Paragraphs 11, installing Kazanon also causes the installation of Clientman.

39.     Clientman downloads and installs advertising and other software programs.

Clientman and these software programs replace search results provided by search engine web sites and send pop-up advertisements and other Internet ads.  In addition, Clientman collects and stores consumers' personal information without their knowledge and contrary to their expectations.

40. These facts would be material to consumers in their decision to install or use Kazanon, but Defendants failed to adequately disclose these facts to consumers.  Therefore, the failure to disclose these facts, in light of the representation made, constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT FOUR

### Unfairly Disseminating Software That Consumers Cannot Remove from Their Computers

41. Through the means described in Paragraphs 9 through 12, Defendants install the Clientman software onto consumers computers.  As described in Paragraphs 13 through 16 and 25 through 29, Clientman downloads and installs advertising and other software programs, replaces search results provided by search engine web sites and sends pop-up advertisements and other Internet ads.  In addition, Clientman collects and stores consumers' personal information without their knowledge and contrary to their expectations.  Through the means described in Paragraphs 25 through 29, consumers cannot locate this software on their computers and remove it through the use of reasonable efforts.

42. Defendants' course of conduct in disseminating software that is described in Paragraphs 13 through 16 and 25 through 29 causes substantial consumer injury by requiring consumers to spend substantial time and money to resolve these problems with their computers and to prevent the future collection of personal information from their computers.  Further, consumers have no recourse to reclaim the personal information that Defendants have collected

and stored or to prevent Defendants' disclosure of that information. Consumers cannot reasonably avoid this injury because Defendants do not provide an effective means for them to locate the software and remove it from their computers. The Defendants' practices do not benefit consumers or competition. Thus, Defendants' practices cause or are likely to cause substantial injury that consumers cannot reasonably avoid, and this injury is not outweighed by countervailing benefits to consumers or competition.

43. Therefore, Defendants' practices, as described in Paragraphs 41 and 42 above, constitute an unfair practice in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

44. Defendants' violations of Section 5 of the FTC Act, 15 U.S.C. § 45(a), as set forth above, have caused and continue to cause substantial injury to consumers. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

45. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief, including consumer redress, disgorgement and restitution, to prevent and remedy any violations of any provision of law enforced by the Federal Trade Commission.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, the Federal Trade Commission, requests that this Court, as authorized by Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and pursuant to its own equitable powers:

1. Award plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to

preserve the possibility of effective final relief.

2.   Permanently enjoin the Defendants from violating Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as alleged in this Complaint.

3.   Award such equitable relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including, but not limited to, rescission of contracts and restitution, and the disgorgement of ill-gotten gains;

4.   Award Plaintiff the costs of bringing this action as well as such additional equitable relief as the Court may determine to be just and proper.

Dated March 3, 2006

Respectfully submitted:

FOR THE FEDERAL TRADE COMMISSION:

WILLIAM BLUMENTHAL
General Counsel


/s/ Tracy Shapiro
Tracy R. Shapiro (California Bar No. 220811)
Laura M. Sullivan (New York Bar No. 2919660)
Federal Trade Commission
601 New Jersey Avenue, N.W.
Washington, D.C. 20001
(202) 326-2343/3327 (Offices)
(202) 326-3259 (Fax)

Attorneys for Plaintiff