**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>               Plaintiff,<br><br>     v.<br><br>ODYSSEUS MARKETING, INC., and<br>WALTER RINES,<br><br>               Defendants. | Civil No. 05-CV-330-SM |

**STIPULATED FINAL ORDER**
**FOR PERMANENT INJUNCTION AND**
**SETTLEMENT OF CLAIMS FOR MONETARY RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission") filed a Complaint and Amended Complaint ("Complaint") for permanent injunction and other relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The Complaint alleges that Odysseus Marketing, Inc. ("Odysseus") and Walter Rines ("Rines") (collectively "Defendants") engaged in unfair and deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), in connection with their marketing and distribution of software to consumers. Defendants Odysseus and Rines deny the allegations in the Complaint, except jurisdictional facts, but are willing to agree to the entry of the following Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief ("Order"), without adjudication of any issues of fact or law.

The Commission and Defendants have stipulated to the entry of the following Order in settlement of the Commission's Complaint against them. The Court, being advised in the premises, finds:

**FINDINGS**

1. This Court has jurisdiction over the subject matter of this case, and jurisdiction over Defendants Odysseus and Rines pursuant to 15 U.S.C. §§ 45(a), 53(b), and 28 U.S.C. §§ 1331, 1337(a) and 1345.

2. Venue in the District of New Hampshire is proper pursuant to 15 U.S.C. §§ 53(b) and 28 U.S.C. §§ 1391(b) and (c).

3. The Complaint states a claim upon which relief can be granted and the Commission has the authority to seek the relief it has requested.

4. The activities of Defendants are or were in or affecting commerce, as defined in 15 U.S.C. § 44.

5. The parties waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order.  Defendants also waive any claims that they may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order.

6. Each party shall bear its own costs and attorneys' fees.

7. Entry of this Order is in the public interest.

8. This Order was drafted jointly by Plaintiff and Defendants Odysseus and Rines and reflects the negotiated agreement among the parties.

9. The paragraphs of this Order shall be read as the necessary requirements for compliance and not as alternatives for compliance and no paragraph serves to modify another paragraph unless expressly so stated.

**ORDER**

**DEFINITIONS**

For purposes of this Order, the following definitions shall apply:

1. "Odysseus" means Odysseus Marketing, Inc., a New Hampshire corporation with its principal place of business at 6 Laurel Lane, Stratham, New Hampshire 03885.

2.      "Rines" means Walter Rines, individually and as an officer and director of Odysseus.

3.      "Defendants" means Odysseus and Rines.

4.      "Covered product" shall mean any desktop or laptop computer, handheld device, telephone, or other electronic product or device that has a platform on which to download, install, and run any software program, code, or other content.

5.      "Kazanon" means the software program marketed under the name "Kazanon," including any and all versions that Defendants advertised, or caused to be advertised, through the Internet, including but not limited to, through the web site www.kazanon.com.

6.      "Uninstall" means:

   a.      Removing a software program from a covered product;

   b.      Removing all files, registry keys, and components that were added to a covered product when such software program was initially installed;

   c.      Removing all files, registry keys, and components that were subsequently generated by such software program;

   d.      Restoring all files, registry keys, and components that such software program caused to be altered; and

   e.      Preventing the reinstallation of such software program or any of its files, registry keys, or components.

7.      "Express consent" means that:

   a.      Prior to distributing, downloading, or installing any software program, code, script, or other content to any covered product:

      1.      The specific effects that such software program, code, script, or other content would have on the covered product are clearly and conspicuously disclosed to the user of the product, including, but not limited to, disclosure of any of the following:

          i.      Causing the display of any advertisement, including but not limited to any pop-up or banner advertisement, any sponsored link or hyperlink to an advertisement placed on a web site, or any contextual response;

          ii.     Modifying any web browser or operating system software;

          iii.    Collecting personally identifiable information or passwords or codes that enable access to such information;

          iv.    Causing the download of any additional software program, code, script, or content;

          v.     Causing additional web browser windows to open a URL related to the URL a consumer is viewing; and

          vi.    Placing icons on a consumer's desktop or in the "Favorites" folder;  and

     2.     The user of the covered product indicates assent to the installation or download of such software program, code, script, or other content by clicking on a button that is clearly labeled to convey that it will activate the installation or download, or by taking substantially similar affirmative action authorizing the installation or download.

  b.     Prior to obtaining any personally identifiable information from any person:

     1.     The specific personal information to be obtained is clearly and conspicuously disclosed to that person;

     2.     Each specific use, including but not limited to each sale, rent, lease, transfer, or other disclosure, that will be made of such information is clearly and conspicuously disclosed to that person; and

3.    That person indicates assent to the taking and use of such
information by clicking on a button that is labeled to convey his or
her specific consent to the specific taking and use of the
information, or by taking substantially similar affirmative action
authorizing the taking and use of the information.

8.    "Clearly and conspicuously" means:

a.    The disclosure shall be unavoidable.  Nothing contrary to, inconsistent
with, or in mitigation of the disclosure shall be used in any advertisement;

b.    In the case of any disclosure concerning the distribution or installation of
any software program or other content, the disclosure shall be made prior
to the consumer installing or downloading any software code, program, or
content and prior to the consumer incurring any financial obligation;

c.    In the case of any disclosure concerning the obtaining or use of personally
identifiable information, the disclosure shall be made immediately prior
to the person providing any such information;

d.    In the case of any disclosure required for purposes of obtaining express
consent as defined in this Order, a disclosure made in any End User
License Agreement shall *not* constitute a clear and conspicuous
disclosure; and

e.    In the case of advertisements communicated through an electronic
medium (such as television, video, radio, and interactive media such as
the Internet and online services), the disclosure shall be presented
simultaneously in both the audio and video portion of the advertisement.
*Provided, however,* that in any advertisement presented solely through
visual or audio means, the disclosure may be made through the same
means in which the advertisement is presented.  The audio disclosure
shall be delivered in a volume and cadence sufficient for an ordinary

Page 5 of  27

consumer to hear and comprehend it. The visual disclosure shall be of a size and shade, and shall appear on the screen for a duration, sufficient for an ordinary consumer to read and comprehend such disclosure.

9. "Personally identifiable information" means identifiable information from or about an individual including, but not limited to:

   a. A first and last name;

   b. A home or other physical address, including street name, name of a city or town, and zip code;

   c. An email address or other online contact information, such as an instant messaging user identifier or a screen name that reveals an individual's email address;

   d. A telephone number;

   e. A Social Security Number, tax identification number, passport number, driver's license number, or any other government-issued identification number;

   f. A financial account number, in combination with any information necessary to access the account;

   g. An Internet Protocol ("IP") address or host name that identifies an individual;

   h. A persistent identifier, such as a customer number held in a "cookie" or processor serial number, that is combined with other available data that identifies an individual; or

   i. Any information that is combined with subparts a through h above.

10. A "security vulnerability" means a weakness, flaw, or bug in a software program or application that can be used to increase access privileges to a computer system, compromise data stored on it, or control its operation.

11.  "Assisting others" means knowingly providing any of the following services to any person or entity:

    a.  Developing, supplying, distributing, or publishing any software program, product, or service;

    b.  Formulating, developing, or providing, or arranging for the formulation, development, or provision of, any Internet advertising or marketing content for any person or entity; or

    c.  Performing advertising, or marketing services of any kind for any person or entity.

12.  "Operating system" means the system software responsible for managing and controlling a covered product's hardware and computer resources and its basic operations, including providing a platform on which to download, install, and run any software program.

13.  The "World Wide Web" or the "Web" is a system used on the Internet for cross-referencing and retrieving information.  Documents ("pages" or "sites") on the World Wide Web are most frequently formatted in HyperText Markup Language ("HTML"), which supports links to other documents on the World Wide Web.

14.  A "web site" is a set of electronic files or documents, usually a home page and subordinate pages, readily viewable by anyone with access to the Web and standard Internet browser software.

15.  A "web page" is a single electronic document on the World Wide Web, readily viewable by anyone with access to the Web and standard Internet browser software.  Every web page on the World Wide Web is identified by a globally unique address.

16.  A "web browser" is a software application used to view, download, upload, surf, or otherwise access documents ("pages" or "sites") on the World Wide Web.  Web browsers read coded documents that reside on servers, and interpret the coding into what users see rendered as a web page or web site.  A user may

retrieve and view a web page or site by entering the Uniform Resource Locator ("URL") or domain name of the web page in the address bar of the web browser.

17.     A "Host" or "Hosting Company" is the party that provides the infrastructure for a computer service. With respect to web pages and web sites, a Host or Hosting Company maintains "Internet servers" – the computers on which web sites, web pages, Internet files, or resources reside. The Host or Hosting Company also maintains the communication lines required to link the server to the Internet.

18.     "Internet Service Provider" is the party that provides users access to the Internet.

19.     "Affiliate program" is an arrangement under which an online merchant pays another (the "affiliate") to market, advertise, and/or distribute goods, software programs, or services on the merchant's behalf, with the affiliate being paid based on performances measures, typically sales, downloads, clicks on banner ads, or registrations, for which its activities were responsible.

## PROHIBITED BUSINESS ACTIVITIES

### Distribution or Installation of Software Script, Code, or Other Content

#### I.

**IT IS HEREBY ORDERED** that Defendants, whether acting directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby enjoined from, or assisting others in, publishing, disseminating, or distributing on or through the Internet, the World Wide Web, any bulletin board system, File Transfer Protocol ("FTP"), electronic mail, instant message, web page, or web site, any software script, code, or other content that exploits a security vulnerability of any operating system, web browser, or other application to download or install any software code, program, script, or content.

## II.

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby enjoined from, or assisting others in:

A.  Distributing, installing, or downloading, or causing any user of a covered product to download or install, any software program, code, script, or any other content *unless* such user provides express consent as defined in this Order prior to the distribution, installation, or downloading; and

B.  Distributing, installing, or downloading, or causing any user of a covered product to download or install, any software program, code, script, or any other content that:

    1.  Redirects any covered product that is connected to the Internet or World Wide Web to different web sites, web pages, FTP servers, or other Internet servers than those the product's user chose to visit;

    2.  Modifies or replaces any search engine's or other application's search results, search features, or functions; or

    3.  Changes or causes to change any web browser's default home page to a different web page.

## III.

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, in connection with distributing or downloading any software program, code, script, or other content, are hereby enjoined from, or assisting

others in, deleting, modifying, altering, or replacing files contained in the System32 folder of any Microsoft Windows operating system.

## Receipt and Use of Personally Identifiable Information

### IV.

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby enjoined from, or assisting others in:

    A.    Obtaining any personally identifiable information of any person *unless* that person provides express consent as defined in this Order prior to the taking and use of the information;

    B.    Selling, renting, leasing, transferring, or otherwise disclosing any personally identifiable information of any person whose information was obtained without such person's express consent; and

    C.    Using or receiving any remuneration or other consideration from any third party for the use of any personally identifiable information of any person whose information was obtained without such person's express consent.

### V.

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby enjoined from, or assisting others in, selling, renting, leasing, transferring, disclosing, using, or otherwise benefitting from the use of any personally identifiable information that was obtained by or for any Defendant, at any time prior to entry of this Order, in connection with the distribution of Ipend, Datastorm, or Clientman software or other Internet-related activities. *Provided, however,* the Defendants may

disclose such information to a law enforcement agency or as required by any law, regulation, or court order. *Provided further,* that no later than thirty (30) days after entry of this Order, Defendants shall permanently delete or destroy all such information and shall provide written confirmation to the FTC, sworn under penalty of perjury, that all such personally identifiable information has been deleted or destroyed unless Defendants are prohibited from deleting or destroying such information by law, regulation, or court order, in which case Defendants shall provide a written statement to the FTC, sworn under penalty of perjury, identifying any personally identifiable information that has not been deleted or destroyed and the specific law, regulation, or court order that prohibits Defendants from deleting or destroying such information.

**Representations Concerning Efficacy and Performance**

**VI.**

**IT IS FURTHER ORDERED** that Defendants, directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, in connection with the labeling, advertising, promotion, offering for sale, sale, distribution, installation, or downloading of any type of software program, code, file, or content, are hereby enjoined from making, or assisting others in making, expressly or by implication, including through the use of trade names or endorsements:

A.   Any representation that such product makes users of peer-to-peer file-sharing programs anonymous, and that therefore no one will discover their identity, or their computers' IP address or location, when they download or trade music, movies, software, or any other data, sound, or video file over the Internet, or

B.   Any representation concerning the absolute or comparative benefits, efficacy, performance, cost, or features of such software program, code, file, or content, unless such representation is true, non-misleading, and at the time the claim is made,

Defendants possess and rely upon competent and reliable evidence that substantiates the representation.

### Removal of Software

### VII.

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby enjoined from, or assisting others in, distributing, installing, or downloading, or causing any user of a covered product to download or install, any software program, code, script, or any other content without providing a reasonable and effective means to uninstall such software program, code, script, and any other content from any covered product on which it is installed, either through the use of the default uninstall utility of the product's operating system or an uninstall utility that is included with such software program, code, script, or other content. For purposes of this Order, requiring any user of a covered product to access a web site to uninstall such software program, code, script, or other content shall not constitute a reasonable and effective means to uninstall.

### VIII.

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or through any person, corporation, subsidiary, division, or other device, and their officers, agents, directors, employees, salespersons, independent contractors, affiliates, successors, assigns, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby enjoined from, or assisting others in, distributing, installing, or downloading, or causing any user of a covered product to download or install any software program, code, script or other content that prevents the user of the covered product from readily locating or removing the software, including but not limited to, the following:

A.     Hiding or cloaking files, folders, or directories;

B.     Using random or misleading names or dates; or

C.     Misrepresenting the purpose or effect of files, directory folders, formats, or
       registry entries.

### BOND REQUIREMENT FOR DEFENDANT RINES

### IX.

**IT IS FURTHER ORDERED** that:

A.     Defendant Rines, whether directly, or in concert with others, or through any
       business, entity, corporation, subsidiary, division, or other device, in which he
       has a direct or indirect ownership interest or controlling interest, or for which he
       holds a managerial post or serves as an officer, director, consultant, or employee
       is hereby permanently enjoined and restrained from participating, or assisting
       others, in any manner whatsoever, in the downloading or installation of any
       software program, code, script, or other content that:

       1.     Causes the display of any advertisement;

       2.     Modifies any web browser or operating system software; or

       3.     Collects any personally identifiable information,

       unless he first obtains a surety bond in the principal sum of Five Hundred
       Thousand Dollars ($500,000).

B.     The terms and conditions of the bond required by Subparagraph A of this
       Paragraph shall be as follows:

       1.     The bond shall be conditioned upon compliance with the provisions of
              this Stipulated Final Order for Permanent Injunction and Settlement of
              Claims for Monetary Relief and with Section 5(a) of the FTC Act, 15
              U.S.C. § 45(a);

       2.     The bond shall be continuous and remain in force and effect as long as
              Defendant Rines engages in any Bond Covered Activity as defined in

Page 13 of 27

Subparagraph A, and for at least three (3) years after he has ceased to engage in any such Bond Covered Activity.

3.  The bond shall cite this Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief as the basis of the bond, and shall provide surety thereunder to consumers against financial loss resulting from any violation of the provisions of this Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief, or Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

4.  The bond required by this section shall be issued by a surety company that:

    a.  Is admitted to do business in each of the states in which Defendant Rines conducts business; and

    b.  Holds a Federal Certificate of Authority as Acceptable Surety on Federal Bond and Reinsuring.

5.  The bond shall be in favor of the Commission for the benefit of any consumer or consumers injured as a result of any violation of the provisions of this Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief or of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

6.  The bond required is in addition to and not in lieu of any other bond required by federal, state, or local law. The bond requirements of this Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief shall not be construed to limit or preempt the regulatory powers of any other federal, state, or local governmental agency or authority.

7.  At least ten (10) days before commencing any activity covered by this Bond, Defendant Rines shall provide a copy of any bond required by this

Paragraph to the Associate Director for Enforcement at the FTC by overnight courier.

8.   Defendant Rines, directly or through any other persons acting in concert or participation with him or under his authority, supervision, or control shall not disclose the existence of any surety bond required by this Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief to any consumer or prospective customer without simultaneously making the following disclosure: **"This Bond Is Required by Order of the U.S. District Court in Settlement of Charges of Unfair and Deceptive Representations in the Promotion and Sale of Computer Software."**  Such disclosure shall be made clearly and conspicuously, and in close proximity to any statement disclosing the existence of the bond.

C.   In lieu of the bond required by Subparagraph A hereof, Defendant Rines may place the sum of the amount of the bond in cash or by an irrevocable letter of credit issued by an accredited United States bank, in an escrow account to be held by a suitable escrow agent to be selected by the Commission or its representative.  Defendant Rines shall pay the costs associated with the creation, funding, operation, and administration of the escrow account.  The letter of credit shall be subject to the terms and conditions of the bond required by Subparagraph B.1 through B.3, and B.5 through B.8 hereof.  The escrow agreement shall provide that the escrow agent, within thirty (30) days following receipt of notice that a final judgment or an order of the Commission against Defendant Rines for consumer redress or disgorgement in an action brought under the provisions of the FTC Act has been entered, or in the case of an order of the FTC, has become final, finding that Defendant Rines has violated the terms of this Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief or

the provisions of the FTC Act, and determining the amount of consumer redress or disgorgement to be paid, shall pay to the Commission so much of the funds of the escrow account as does not exceed the amount of consumer redress or disgorgement ordered, and which remains unsatisfied at the time notice is provided to the escrow agent, *provided that*, if Defendant Rines has agreed to the entry of a court order or an order of the Commission, a specific finding that Defendant Rines has violated the terms of this Stipulated Final Order for Permanent Injunction and Settlement of Claims for Monetary Relief or the provisions of the FTC Act shall not be necessary.

## MONETARY JUDGMENT AND CONSUMER REDRESS

### Judgment

### X.

**IT IS FURTHER ORDERED** that judgment for equitable relief is hereby entered in favor of the Commission and against the Defendants, jointly and severally, in the amount of One Million Seven Hundred and Fifty Thousand Dollars ($1,750,000). *Provided, however, that* this judgment shall be suspended and, subject to the provisions of Paragraph XI, shall be satisfied if Defendants timely and completely fulfill the payment obligations set forth below.

A.   Defendants, jointly and severally, shall pay to the Commission the sum of Ten Thousand Dollars ($10,000). Defendants have placed this Ten Thousand Dollars ($10,000) payment into a non-interest bearing trust account at the law firm of Defendants' counsel, Shaines & McEachern, P.A., which shall be held by Defendants' counsel in such trust account and transferred within five (5) days of entry of judgment.

B.   All payments shall be made by wire transfer into an account to be designated by the Commission in accord with instructions provided by the Commission.

C.     All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including but not limited to consumer redress, and any attendant expenses for the administration of such equitable relief.

D.     In the event that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the Defendants' practices alleged in the Complaint.  Any funds not used for such equitable relief shall be deposited in the United States Treasury as disgorgement.  Defendants shall have no right to challenge the Commission's choice of remedies under this Paragraph or the manner of distribution chosen by the Commission.  No portion of the payment as herein provided shall be deemed payment of any fine, penalty, forfeiture, or punitive assessment.

E.     Defendants relinquish all dominion, control, and title to the funds paid into the account established pursuant to this Order, and all legal and equitable title to the funds shall vest in the Treasurer of the United States unless and until such funds are disbursed to consumers.  Defendants shall make no claim to or demand for the return of the funds, directly or indirectly, through counsel or otherwise; and in the event of bankruptcy of any Defendant, such Defendant acknowledges that the funds are not part of the debtor's estate, nor does the estate have any claim or interest therein.

F.     In the event of any default by Defendants of any obligation imposed on Defendants under this Paragraph, including but not limited to the failure to timely and completely fulfill the payment obligation set forth in Subparagraph A:

1.  The suspension of the judgment amount set forth in this Paragraph shall be vacated as to Defendants, and the full amount of that judgment, $1.75 Million Dollars ($1,750,000), shall immediately become due, plus interest from the date of entry of this Final Judgment pursuant to 28 U.S.C. § 1961, less any payments already made; and

2.  The Commission shall be entitled to immediately exercise any and all rights and remedies against the Defendant and his property, to collect the full amount of the $1.75 Million Dollars ($1,750,000) judgment amount set forth in this Paragraph and interest thereon, less any payments already made.

G.  Defendants agree that, if they fail to timely and completely fulfill the payment set forth in this Final Judgment, the facts as alleged in the Complaint filed in this matter shall be taken as true in any subsequent litigation filed by the Commission to enforce its rights pursuant to this Final Judgment, including but not limited to, a nondischargeability complaint in any bankruptcy case.

H.  In accordance with 31 U.S.C. § 7701, Defendants are hereby required, unless they each have done so already, to furnish to the Commission their taxpayer identifying numbers and/or social security numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government.

I.  Proceedings instituted under this Paragraph are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

**Right to Reopen**

**XI.**

**IT IS FURTHER ORDERED** that:

A.     The Commission's agreement to this Order is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' certified financial statements and supporting documents submitted to the Commission on or about July 18, 2006, as well as any and all subsequent addenda thereto and any and all information contained in Defendants' general ledger which was provided to the Commission pursuant to discovery in this proceeding.  Defendants stipulate that all of these materials are truthful, accurate and complete.  These documents contain material information upon which the Commission relied in negotiating and agreeing to the terms of this Order.

B.     If, upon motion by the Commission, a Court should determine that the Stipulating Defendants made a material misrepresentation or omitted material information concerning their financial condition, then the Court shall enter judgment against the Stipulating Defendants, jointly and severally, in favor of the Commission, in the amount of One Million Seven Hundred and Fifty Thousand Dollars ($1,750,000) in U.S. currency minus any payments previously made under Paragraph X of this Order, which amount shall become immediately due and payable by Defendant(s), and interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended, shall immediately begin to accrue on the unpaid balance; *provided, however, that* in all other respects this Final Judgment shall remain in full force and effect unless otherwise ordered by the Court; and, *provided further, that* proceedings instituted under this provision would be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including but not limited to contempt proceedings, or any other

proceedings that the Commission or the United States may initiate to enforce this
Final Judgment. For purposes of this Paragraph, and any subsequent proceedings
to enforce payment, including but not limited to a non-dischargeability complaint
filed in a bankruptcy proceeding, Defendants agree not to contest any of the
allegations in the Commission's Complaint.

## DISTRIBUTION OF ORDER

## XII.

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry
of this Order, Defendants shall deliver copies of the Order as directed below:

A.  Defendant Odysseus must deliver a copy of this Order to each of its principals,
officers, directors, and managers. Defendant Odysseus must also deliver a copy
of the Order to all of its employees, agents, programmers, and representatives
who engage in conduct related to the subject matter of this Order. For current
personnel, delivery shall be within five (5) days of service of this Order upon
Defendants. For new personnel, delivery shall occur prior to their assuming their
responsibilities.

B.  For any business that Defendant Rines controls, directly or indirectly, or in which
Rines has a majority ownership interest, Defendant Rines must deliver a copy of
this Order to all principals, officers, directors, and managers of that business.
Defendant Rines must also deliver copies of this Order to all employees, agents,
and representatives of that business who engage in conduct related to the subject
matter of that business. For current personnel, delivery shall be within five (5)
days of service of this Order upon Defendants. For new personnel, delivery shall
occur prior to their assuming their responsibilities.

C.  For any business where Defendant Rines is not a controlling person of the
business but otherwise engages in conduct related to the subject matter of this

Order, Defendant Rines shall deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.    Defendants Odysseus and Rines must secure a signed and dated statement acknowledging receipt of this Order, within thirty days of delivery, from each person receiving a copy of the Order pursuant to this Paragraph.

## COMPLIANCE MONITORING

## XIII.

**IT IS FURTHER ORDERED** that, for purposes of monitoring and investigating compliance with any provision of this Order:

A.    Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants each shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in such defendant's possession or direct or indirect control to inspect the business operations;

B.    In addition, the Commission is authorized to monitor Defendants' compliance with this Order by all lawful means, including, but not limited to the following:

    1.    Obtaining discovery from any person, without further leave of the Court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, and 45;

    2.    Posing as customers and clients to Defendants, Defendants' employees, or any other entity managed or controlled in whole or in part by any Defendant, without the necessity of identification or prior notice; and

C.    Defendants shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to conduct subject to

this Order.  The person interviewed may have counsel present.

*Provided, however,* that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1).

## COMPLIANCE REPORTING BY DEFENDANTS

### XIV.

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

    A.    For a period of five (5)  years from the date of entry of this Order,

        1.    Defendant Rines shall notify the Commission of the following:

            a.    Any changes in residence(s), mailing address(es), and telephone number(s) of Defendant Rines, within ten (10) days of the date of such change;

            b.    Any changes in the employment status (including self-employment) of Defendant Rines and any change in the ownership by Defendant Rines in any business entity, within ten (10) days of such change.  Such notice shall include the name and address of each business that Defendant Rines is affiliated with, employed by, creates or forms, or performs services for; a statement of the nature of the business; and a statement of the Defendant Rines' duties and responsibilities in connection with the business or employment; and

            c.    Any changes in Defendant Rines' name or use of any aliases or fictitious names; and

2.      Defendants Odysseus and Rines shall notify the Commission of any

proposed change in corporate structure of Defendant Odysseus or any

business entity that Defendant Rines directly or indirectly controls, or has

an ownership interest in, that may affect compliance obligations arising

under this Order, including but not limited to a dissolution, assignment,

sale, merger, or other action that would result in the emergence of a

successor entity; the creation or dissolution of a subsidiary, parent, or

affiliate that engages in any acts or practices subject to this Order; the

filing of a bankruptcy petition; or a change in the corporate name or

address, at least thirty (30) days prior to such change, *provided that*, with

respect to any proposed change in the corporation about which a

Defendant learns less than thirty (30) days prior to the date such action is

to take place, the Defendant shall notify the Commission as soon as is

practicable after obtaining such knowledge.

B.      One hundred and eighty (180) days after the date of entry of this Order,

Defendants Odysseus and Rines each shall provide a written report to the

Commission, sworn to under penalty of perjury, setting forth in detail the manner

and form in which they have complied and are complying with this Order.  This

report shall include, but not be limited to:

1.      For Defendant Rines:

a.      The then-current residence addresses, mailing addresses, and

telephone numbers of the Defendant;

b.      The then-current employment and business addresses and

telephone numbers of the Defendant, a description of the business

activities of each such employer or business, and the title and

responsibilities of the Defendant, for each such employer or

business.  For purposes of this Paragraph, "employment" includes the performance of services as an employee, consultant, or independent contractor; and "employers" include any individual or entity for whom Defendant Rines performs services as an employee, consultant, or independent contractor;

c.  The full name, address, telephone number, and state of incorporation of each corporation for which the Defendant is an officer or director or in which he holds more than five (5) percent of the shares of the corporation;

d.  The domain name, IP address, Host or Host Company (including contact information), and uniform resource locator ("URL") for each web site, FTP site, bulletin board, or Internet server that Defendant Rines has created, operates, or exercises any control over;

e.  A written statement identifying each software program Defendant Rines distributes through any Internet server or web site that he operates or exercises any control over, and disclosing the nature, purpose, and effect of such program and the methods by which he distributes the program; and

f.  Any other change required to be reported under subparagraph A of this Paragraph.

2.  For Defendants Odysseus and Rines:

a.  A copy of each acknowledgment of receipt of this Order obtained by Defendant pursuant to Paragraph XII;

b.  A copy of any performance bond obtained pursuant to Paragraph IX; and

        c.      Any other changes required to be reported under Subparagraph A

of this Section.

C.      For purposes of this Order, Defendants Odysseus and Rines each shall, unless

otherwise directed by the Commission's authorized representatives, mail all

written notifications to the Commission to:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W.,
> Washington, D.C. 20580
> Re: **FTC v. Odysseus Marketing, Inc. et al.,** No. 1:05-cv-00330-SM

D.      For purposes of the compliance reporting required by this Paragraph, the

Commission is authorized to communicate in writing directly with Defendants

Odysseus and Rines.

### RECORD KEEPING PROVISIONS

### XV.

**IT IS FURTHER ORDERED** that, for a period of eight (8) years from the date of entry
of this Order, Defendant Odysseus and Defendant Rines and any business in which Defendant
Rines is a majority owner or otherwise directly or indirectly controls the business and the
business engages, or assists others in any conduct covered by this Order, are hereby restrained
and enjoined from failing to continue to create and retain the following records:

A.      Accounting records that reflect the cost of any goods or services sold, revenues

generated, and disbursement of such revenues;

B.      Personnel records accurately reflecting: the name, address, and telephone

number of each person employed in any capacity by such business, including as

an independent contractor; that person's job title or position; the date upon which

the person commenced work; and the date and reason for the person's

termination, if applicable;

C.    The full name, address, and telephone number, and the date upon which the work commenced and ended, of:

    1.    Each person, company, or entity who has developed, created, modified, or managed any software code, script, or content on any Defendant's behalf;

    2.    Each Internet Service Provider used by any Defendant;

    3.    Each Host or Hosting Company used by any Defendant;

    4.    Each person, company, or entity who paid any Defendant through any affiliate program;

    5.    Each person, company, or entity who has paid Defendants in connection with any Internet marketing activities; and

    6.    Each person, company, or entity who any Defendant has paid to procure the download of any software program.

D.    Customer files containing the names, addresses, telephone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

E.    Complaints and refund requests (whether received directly, indirectly, or though any third party) and all records showing any responses to those complaints or requests;

F.    Copies of all advertisements, promotional materials, or other marketing materials utilized in the advertising, marketing, promotion, offering for sale, distribution, or sale of any product or service covered by this Order;

G.    A copy of each software program, code, script, or other content that any Defendant distributed or installed, or caused any person to download or install, and all disclosures presented to users before the distribution, installation, or download of such software program; and

H.      All records and documents necessary to demonstrate full compliance with each

provision of this Order, including but not limited to, copies of acknowledgments

of receipt of this Order and all reports submitted to the FTC pursuant to this

Order.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

### XVI.

**IT IS FURTHER ORDERED** that each Defendant, within five (5) business days of

receipt of this Order as entered by the Court, must submit to the Commission a truthful sworn

statement acknowledging receipt of this Order.

## RETENTION OF JURISDICTION

### XVII.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for

purposes of construction, modification and enforcement of this Order.

**SO STIPULATED:**

ROSEMARY ROSSO (NY Bar No. 1729730
TRACY R. SHAPIRO (CA Bar No. 220811)
Federal Trade Commission
601 New Jersey Avenue, N.W.
Room NJ-3212
Washington, D.C. 20001
(202) 326-3327, -2343 (voice)
(202) 326-3259 (fax)

ATTORNEYS FOR PLAINTIFF

WALTER RINES, individually, and as
officer and director of Odysseus Marketing,
Inc.

PETER DOYLE (Bar No. 4053)
Shaines and McEachern
25 Maplewood Avenue
PO Box 360
Portsmouth, NH 03802-0360
(603) 436-3110 (voice)
(603) 436-2993 (fax)

ATTORNEY FOR DEFENDANTS

**SO ORDERED:**

DATED: October 24, 2006

/s/ Steven J. McAuliffe
HON. STEVEN J. MCAULIFFE
Chief UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, Rosemary Rosso, certify that on October 20, 2006, I caused a copy of the Stipulated
Final Order For Permanent Injunction and Settlement of Claims For Monetary Relief to be served
electronically, by means of the Court's ECF system, upon the following counsel for Defendants
Odysseus Marketing, Inc. and Walter Rines:

Peter V. Doyle, Esq.
Shaines & McEachern, PA
25 Maplewood Avenue
P.O. Box 360
Portsmouth, N.H. 03802

/s/ Rosemary Rosso ____ _____
Rosemary Rosso (NY Bar No. 1729730)
Federal Trade Commission
601 New Jersey Avenue, N.W.
Rm. NJ-3212
Washington, D.C. 20580
(202) 326-3327 (Tel.)
(202) 326-3259 (Fax)
rrosso@ftc.gov

Dated: October 20, 2006